UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ROBERT DURALL,

    Petitioner,

v.

KENNETH QUINN,

    Respondent.

No. 06-cv-01012-MJP-MAT

ORDER ADOPTING REPORT AND RECOMMENDATION AND DENYING PETITION FOR WRIT OF HABEAS CORPUS

**Overview**

State prisoner Robert Durall ("Durall") has filed objections to the Magistrate Judge's Report and Recommendation ("R & R"), which recommended denying Durall's petition for a writ of habeas corpus. Upon review of the record (Dk. Nos. 4, 13, 16, 19, 20, 21) and documents submitted by the parties, this Court ADOPTS the Magistrate Judge's R & R[1] and DENIES Durall's petition.

**Background**

This Court adopts the factual and procedural background of this case as set forth in the R& R.

---

[1] While this Court adopts the R & R's ultimate conclusions and much of its reasoning, there are some issues for which this Court wishes to put its own legal analysis on the record. For other issues, this Court will adopt the R & R's analysis without significant elaboration.

ORDER - 1

**Standard of Review**

Regarding claims that were adjudicated on the merits in state court, this Court may only grant habeas relief if the state court decision was contrary to, or involved an unreasonable application of, clearly established Supreme Court precedent, or if the state court decision was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d). In conducting this inquiry, this Court reviews the "last reasoned decision" of the state courts. See, e.g. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). For most of Durall's claims, the last reasoned decision was the decision of the Washington Supreme Court Commissioner ("Commissioner") denying review of Durall's Personal Restraint Petition.

This Court may not grant habeas relief on a particular claim if a petitioner failed to exhaust state court remedies as to that claim and the claim would now be procedurally barred in state court. See Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991).

**Analysis**

**A.   Durall's Sixth Amendment right to counsel was not violated by the introduction of notes and testimony from Durall's private investigator.**

Durall argues that he was denied his Sixth Amendment right to counsel when the prosecution introduced notes and testimony from Durall's conversation with his private investigator. The Commissioner held that, even if the introduction of this evidence violated Durall's attorney-client privilege, the privilege is not of constitutional magnitude. Furthermore, the Commissioner held that Durall did not suffer prejudice from the claimed error.

The Commissioner's two grounds for denying relief were not unreasonable. Regarding the first ground, Durall cannot point to any Supreme Court case holding that the introduction of evidence in violation of attorney-client privilege violates the Sixth Amendment. The closest case is Weatherford v. Bursey, 429 U.S. 545 (1977), which stated (in dicta) that government eavesdropping on attorney-client conferences, coupled with introduction of evidence gleaned by such eavesdropping, *may* violate

ORDER - 2

1   the Sixth Amendment. Id. at 552. But Weatherford did not address the introduction of evidence

2   without prior government eavesdropping or malfeasance. Furthermore, at least two Circuits have held

3   that the mere introduction of evidence in violation of attorney-client privilege does *not* violate the

4   Sixth Amendment. See United States v. Mett, 178 F.3d 1058, 1066 (9th Cir. 1999); Lange v. Young,

5   869 F.2d 1008, 1012 n.2 (7th Cir. 1989). In light of Weatherford's ambiguity, and lower court rulings

6   on the issue, it was not unreasonable for the Commissioner to determine that introducing evidence in

7   violation of attorney-client privilege does not violate the Sixth Amendment.

8        Regarding the prejudice ground, the Commissioner reasonably determined that Durall was not

9   substantially prejudiced by the introduction of the private investigator ("P.I.") evidence. The

10  prosecution mainly used the P.I. evidence to indirectly discredit the testimony of Dignoraah Perez, a

11  convenience store clerk who testified to seeing Carolyn alive one day *after* Durall had allegedly killed

12  her. The P.I. evidence disclosed that Durall never bothered to tell his private investigator about

13  Perez's story, thus implying that Durall knew Perez's story was false.

14       It is true, as Durall argues in his objections to the R & R, that Perez was a powerful defense

15  witness and it was important for the prosecution to discredit her testimony. However, the prosecution

16  did so in multiple ways besides the introduction of the P.I. evidence. For instance, the prosecution

17  introduced e-mails that Durall wrote to acquaintances regarding Carolyn's disappearance, in which he

18  omitted any mention of Perez's story and instead stated that no one had seen Carolyn since the

19  previous day. These e-mails created the same inference as the P.I. evidence – namely, that Durall

20  knew Perez was mistaken and therefore deliberately didn't relay her story to others. Viewing the

21  evidence as a whole, the P.I. evidence was not an indispensible part of the prosecution's case and

22  Durall was not substantially prejudiced by its introduction. The P.I. evidence did not have a

23  "substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson,

24  507 U.S. 619, 637 (1993).

25

ORDER - 3

**B.    Durall's rights to due process and a fair and impartial jury were not violated by two instances of juror misconduct.**

Durall argues that he was denied his rights to due process and a fair and impartial jury by two instances where jurors engaged in ex parte communication with third parties about his case. The last reasoned decision of the state courts on this claim was the decision of the Washington Court of Appeals on direct review of Durall's conviction. The Court of Appeals concluded that Durall had not made a sufficient showing that the jurors' ex parte communications prejudiced him.

The Court of Appeals' conclusion was not unreasonable. Durall's main objection is that the Court of Appeals placed the burden on him to show prejudice, rather than putting the burden on the state to show that the ex parte communications were harmless. He cites to Remmer v. United States, 347 U.S. 227 (1954) for the proposition that ex parte communications with a juror about the pending case are presumptively prejudicial and the Government bears the burden of showing harmlessness. Id. at 229 (citing Mattox v. United States, 146 U.S. 140, 148-50 (1892)).

However, as the R &R points out, the prejudice presumption of Remmer has been limited to instances of juror *tampering*, rather than other communications with jurors. See United States v. Dutkel, 192 F.3d 893, 895-96 (9th Cir. 1999). Under Dutkel, tampering involves "an effort to influence the jury's verdict by threatening or offering inducements to one or more of the jurors." Id. at 895. None of the ex parte communications in this case involved any coercion or inducements of jurors. Thus, the Court of Appeals was not unreasonable in placing the burden on Durall to show prejudice.

In his objections to the R & R, Durrell cites Caliendo v. Warden of California Men's Colony, 365 F.3d 691 (9th Cir. 2004) for the proposition that ex parte communications with jurors are presumptively prejudicial under the Remmer and Mattox line of cases. However, Caliendo explicitly limited its holding to jurors' communicating with "a witnesses or interested party." 365 F.3d at 696. No such communications occurred in Durall's case.

ORDER - 4

**C.      Durall's rights under the Confrontation Clause were not violated by the introduction of hearsay statements from Carolyn's acquanitances.**

The Commissioner determined that the introduction of hearsay statements against Durall did not violate his rights under the Confrontation Clause because those hearsay statements were not "testimonial" in nature. This conclusion was reasonable. This Court agrees with the R & R – and the Commissioner – that the hearsay statements were not "testimonial" and thus not barred by the Confrontation Clause.

**D.      Providing transcripts of Durall's suppression hearing to the jury during deliberations did not violate Durall's Sixth Amendment right to an impartial jury or his Sixth Amendment right to be present during all critical stages of his trial.**

The last reasoned decision addressing this issue was the decision of the Court of Appeals on direct review. The Court of Appeals did not address the constitutional aspects of this issue, instead focusing on whether the trial court abused its discretion as a matter of evidentiary law by providing the jury with the suppression hearing transcripts.

Nonetheless, this Court adopts the R & R's conclusion that providing these transcripts to the jury did not violate Durall's Sixth Amendment rights. While the Sixth Amendment provides a defendant with the right to be present at all stages of his trial, see Illinois v. Allen, 397 U.S. 337, 338 (1970), it does not prevent a judge from providing exhibits to the jury during deliberations. See United States v. Sobamowo, 892 F.2d 90, 97 (D.C. Cir. 1989) ("defendant's presence not required when exhibits are submitted to the jury during deliberations").

Furthermore, while courts acknowledge that providing transcripts to jurors may unduly emphasize the importance of those transcripts, no court has held that this problem implicates the Sixth Amendment right to a fair and impartial jury. See, e.g. United States v. Montgomery, 150 F.3d 983, 999-1000 (9th Cir. 1998) (analyzing decision to provide transcripts to jury as a simple evidentiary matter rather than a Sixth Amendment issue).

ORDER - 5

**E.   Durall was not denied effective assistance of counsel by his attorney's failure to obtain a written plea agreement in exchange for Durall's leading police to Carolyn's body.**

A claim for ineffective assistance of counsel requires that: (1) Counsel was deficient, and (2) The deficient performance prejudiced the defense. See Strickland v. Washington, 466 U.S. 668, 687 (1984). The Commissioner denied Durall's claim on the first Strickland prong, holding that his counsel was not deficient for failing to obtain a written plea agreement because Durall hadn't show that the State ever offered such an agreement in exchange for his cooperation.

The Commissioner's decision was not unreasonable. Durall has provided no evidence, besides his own assertions, that the Government offered him a plea agreement in exchange for leading police to Carolyn's body. In the absence of any showing that a plea agreement was even offered, Durall's counsel logically cannot be deficient for failing to enshrine such hypothetical plea agreement in writing.

Durall alternatively argues that, even if the Government never offered a plea agreement, his counsel was deficient for falsely *telling* him that the Government had offered a plea agreement and thereby inducing him to lead police to Carolyn's body. But the Commissioner found that Durall's counsel said no such thing, and Durall has not shown that this factual finding was unreasonable.

In his objections to the R &R, Durall argues that his counsel *must* have told him about a plea agreement, because it is objectively unreasonable that he would have led police to Carolyn's body otherwise. But this circumstantial argument is insufficient to show that the Commissioner's factual findings were unreasonable. Durall admits that he has no *direct* evidence that his counsel ever told him about a plea agreement.

Because the Commissioner reasonably determined that Durall's counsel never made statements about any plea agreement, Durall has no claim for ineffective assistance of counsel arising out these alleged statements.

ORDER - 6

**F.   Durall was not denied effective assistance of counsel when his attorney altered the agreement under which Durall led police to Carolyn's body in exchange for a Government promise not to introduce evidence that Dorall had led them there.**

The Commissioner appears to have denied this claim on the second <u>Strickland</u> prong, holding that Durall was not prejudiced by his counsel's alteration of the agreement. The Commissioner's determination was not unreasonable.

The agreement at issue originally stated, in relevant part, "the State has agreed not to seek to introduce at trial or to publicize beforehand any information relating to Mr. Durall's involvement in the discovery of the body of his wife." The agreement was subsequently modified by striking the phrase "or publicize beforehand" and inserting a final sentence: "If, however, the defense introduces such information in any court proceeding, the State is no longer bound by the provisions of this agreement."

When a defendant alleges ineffective assistance arising out of a *plea* agreement, prejudice will be found if a defendant shows that there was a reasonable probability he would not have entered into the agreement but for counsel's errors. <u>Hill v. Lockhart</u>, 474 U.S. 52, 59 (1985). Although Durall's agreement was an assistance agreement rather than a plea agreement, this Court concludes that Durall must at least satisfy the <u>Hill</u> standard to show prejudice. That is, he must show that there was a reasonable probability he would not have entered into the assistance agreement had he known about the altered terms.

Durall cannot make this showing, for the altered terms are quite minor in relation to the overall agreement. The added sentence, allowing the Government to introduce evidence about Durall's assistance if Durall does so first, would hardly be objectionable as it still gives Durall control over whether such evidence will be admitted. The deletion of the "publication" phrase is a closer call, but still is a fairly minor change. Any defendant facing trial for murder would be far more concerned with what evidence is admitted at trial rather than what information is publicized in other forums. A court could readily conclude that there was no reasonable probability Durall would have backed out of the

ORDER - 7

agreement merely on account of these minor alterations. Thus, Durall did not suffer prejudice, even if his counsel was deficient by altering the agreement without his consent.

This Court adopts the R & R's conclusion that Durall has procedurally defaulted on his argument that the alteration of the agreement violated his Fifth Amendment due process rights.

**G.  Durall's constitutional rights were not violated by the admission of evidence that Durall failed to return a detective's call, "refused" a warrantless search, or hired counsel.**

The last reasoned decision of the state courts on this claim was the decision of the Washington Court of Appeals on direct review, which held that the introduction of this evidence did not violate any constitutional rights. The Court of Appeals' legal determination was not unreasonable.

Durall's failure to return the police officer's call and his "refusal" of a warrantless search were really one and the same act. Durall simply neglected to call back the officer who requested a warrantless search. Durall has provided no case law suggesting that introduction of this evidence violates either his Fourth Amendment right to be free from unreasonable searches nor his Fifth Amendment right to silence.

The introduction of evidence that Durall hired counsel shortly after Carolyn's disappearance is a more complicated matter. The Court of Appeals held that "[t]he fact that Durall had hired an attorney was raised by Durall himself to explain his inquiries about withdrawing money from his pension plan." However, the trial transcript clearly shows that the Government elicited testimony that Durall had hired counsel, during the direct examination of witness Allen Becker.

Some courts have held that the Sixth Amendment right to counsel prohibits a prosecutor from eliciting testimony that a defendant secured counsel, even if the defendant secured counsel before any criminal proceedings were instituted. See, e.g. United States v. MacDonald, 620 F.2d 559, 564 (5th Cir. 1980). However, there is no clear Supreme Court authority on this subject. Moreover, even highly protective courts will not consider it reversible error if the prosecutor briefly or "incidentally" elicits this prohibited testimony and does not emphasize it in his arguments. See, e.g., United States v.

ORDER - 8

Daoud, 741 F.2d 478, 480 (1st Cir. 1984); United States v. Milstead, 671 F.2d 950, 953 (5th Cir. 1982).

In this case, the Government only briefly touched on Durall's obtaining counsel and made no mention of it in opening or closing arguments. Thus, the introduction of this evidence would not be reversible Sixth Amendment error even on direct review. It logically follows that Durall cannot obtain habeas relief on this ground. See Duckett v. Godinez, 67 F.3d 734, 742 (9th Cir. 1995).

For similar reasons, the prosecutor's eliciting of this testimony did not "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). The testimony that Durrall failed to return a phone call seems entirely unobjectionable, and the testimony that Durrall hired an attorney was elicited only in passing. Neither piece of evidence "infected the trial with unfairness" for due process purposes.

**H.    Durall's double jeopardy rights were not violated when the jury's initial, sealed verdict was destroyed and the jury began deliberations anew with an alternate juror.**

The Commissioner determined that the jury's initial, sealed verdict was not a "final verdict" that terminated Durall's jeopardy. Thus, double jeopardy did not prohibit the trial judge from destroying that verdict, replacing a juror, and instructing the jury to deliberate anew.

The R & R concluded that the Commissioner's decision was reasonable, and this Court adopts the R & R's analysis of the issue. In his objections to the R & R, Durall argues that his situation creates a case of first impression in the field of double jeopardy. But this argument, if anything, merely reinforces this Court's conclusion that Durall may not achieve habeas relief on this claim. Durall bears the burden of showing that the state court's decision was, inter alia, an unreasonable application of clearly established Supreme Court precedent. See 28 U.S.C. § 2254(d). If there is no Supreme Court case law that clearly applies to Durall's situation, then Durall cannot meet the § 2254 standard for habeas relief.

ORDER - 9

1
2
**I.      Durall's 560-month exceptional sentence did not violate his Sixth Amendment right to have a jury determine all the facts that increase punishment above the prescribed range.**

3      The last reasoned decision of the state courts analyzing this claim was the Commissioner's
4  decision, although Durall framed this claim as a <u>Blakely</u> violation before the Commissioner and as an
5  <u>Apprendi</u> violation before this Court.  See <u>Blakely v. Washington</u>, 542 U.S. 296 (2004); <u>Apprendi v.</u>
6  <u>New Jersey</u>, 530 U.S. 220 (2000).

7      This Court adopts the R & R's conclusion that "Petitioner's argument is essentially an
8  argument that <u>Blakely</u> should be applied retroactively to his case."  And, <u>Blakely</u> does not apply
9  retroactively to convictions that were final before <u>Blakely</u> itself was announced.  <u>Schardt v. Payne</u>, 414
10 F.3d 1025, 1038 (9th Cir. 2005).

11     In his objections to the R & R, Durall argues that <u>Blakely</u> should apply retroactively to his case
12 because <u>Blakely</u> was pending before the Supreme Court during direct review of his conviction, and
13 because he raised what were essentially <u>Blakely</u> arguments to the state courts at that time.  But this
14 argument does not change the simple fact that Durall's conviction became final some four months
15 before the Supreme Court decided <u>Blakely</u>.  Had <u>Blakely</u> been decided just four months earlier, Durall
16 would have had the benefit of its holding.  But this timing does not mean that he is exempt from the
17 general rule that <u>Blakely</u> does not apply retroactively in habeas proceedings.

18
19 **J.      Durall has procedurally defaulted on his argument that the judge violated his due process rights under <u>McMillan v. Pennsylvania</u>, 477 U.S. 79 (1986) by failing to apply a clear and convincing evidence standard to facts that enhanced Dural's sentence.**
20
21     This Court adopts the R & R's conclusion that Durall has procedurally defaulted on this
22 <u>McMillan</u> claim by not properly raising it in the state courts within the state statute of limitations.

23 **K.      Durall is not entitled to an evidentiary hearing on any of the above-captioned claims.**

24     In his objections to the R & R, Durall points out the R & R did not address whether this Court
25 should conduct an evidentiary hearing on any of his claims.  This Court concludes that no evidentiary

ORDER - 10

hearing is warranted. The vast majority of Durall's claims involve "issues that can be resolved by reference to the state court record," and thus there is no need for a hearing on these issues. <u>Totten v. Merkle</u>, 137 F.3d 1172, 1176 (9th Cir. 1998). The only issue that might conceivably be clarified by an evidentiary hearing is whether Durall's counsel falsely told Durall about a plea agreement, or whether the Government in fact *did* offer a plea agreement in exchange for Durall leading police to Carolyn's body. However, Durall failed to develop a factual basis for this claim in state court, and so this Court may not hold an evidentiary hearing on the subject. <u>See</u> 28 U.S.C. § 2254(e)(2); <u>Baja v. Ducharme</u>, 187 F.3d 1075, 1078-79 (9th Cir. 1999).

## Conclusion

None of Durall's claims of error afford a basis for Federal habeas corpus relief. Accordingly, this Court ADOPTS the Magistrate Judge's R & R and DENIES Durall's petition for a writ of habeas corpus.

The Clerk is directed to send copies of this order to all counsel of record.

Dated: May 29, 2007.

/s Marsha J. Pechman

Marsha J. Pechman

United States District Judge

ORDER - 11